IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STEPHANIE MATTHEWS PLAINTIFF

v. No. 3:23-cv-244-DPM

NURTURE SCHOOL, LLC, a/k/a Sharp Childcare; SUNSTAR INSURANCE OF ARKANSAS; and CHRIS EVINS, as an Agent of Sunstar Insurance DEFENDANTS

## ORDER

Does the record contain sufficient evidence to create a jury issue on Matthews's claim that Sunstar, through its agent Chris Evins, intentionally interfered with Matthews's employment contract with NurtureSchool? Three of the tort's four elements are undisputed. Matthews was NurtureSchool's program director. Evins knew she worked there. Matthews lost her job when she refused to return to work without Malley, her service dog. The fighting issue is whether, through improper conduct, Sunstar/Evins intentionally induced or caused Matthews to lose her job. *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Investment Partners*, 373 Ark. 14, 26, 208 S.W.3d 1, 11 (2008); *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 7–14, 969 S.W.2d 160, 162–65

(1998) (collecting cases); RESTATEMENT (SECOND) OF TORTS § 767 (AM. L. INST. 1979).

Evins and Sunstar request summary judgment. Matthews responds that the record creates a jury question on improper inducement. The Court considers the material facts, where genuinely disputed, in Matthews's favor. *Van Dorn v. Hunter*, 919 F.3d 541, 544 (8th Cir. 2019). The Court sketched the background of the parties' employment dispute in earlier Orders. *E.g., Doc. 45 & 88.* The Evins/Barth/Ahmad email string, and the Josh Sharp/Evins text thread, about the insurance coverage issues are undisputed. Matthews does not press the service dog/emotional support dog murkiness involved in the underwriting issue about the Philadelphia Insurance defendants. She points to two other things.

First, Matthews relies on Tiffany Sharp's sworn testimony at a hearing about Matthews's disputed claim for unemployment benefits. On cross examination, this exchange occurred:

> Q: [B]ut you told [Matthews's] she's allowed back in the facility to continue to work, but the dog is not; was that—is that correct?
>
> A: Yes. Because our insurance had already informed us that, if the dog returned on campus, our insurance would immediately be canceled, and therefore, we would have to close business operation.

*Doc. 15-2 at 52.*

Second, Matthews relies on a text from Evins. Near the end of the text thread, Josh told Evins that NurtureSchool had other difficulties with Matthews, and the no-go on insurance would resolve everything because Matthews wouldn't come to work without Malley. Evins replied: "Very good. It sounds like it's all worked out the right way." *Doc. 102-2 at 47.*

All this is not enough to create a fact question on Evins's (and Sunstar's) allegedly improper inducement. Tiffany's unobjected statement at the unemployment hearing presents evidentiary issues.* It's rooted in hearsay, but would be admissible as a basis for action rather than its truth. Matthews, however, needs the cancellation statement to be the truth to show intentional interference. In any event, Tiffany said the same thing without the hearsay cloud in a text to Matthews: "If we continue to have a dog, they will cancel us." *Doc. 102-2 at 18–19.*

A deeper problem here is the lack of impropriety. *Mason*, 333 Ark. at 14, 969 S.W.2d at 165. The Court must consider all the circumstances. RESTATEMENT (SECOND) OF TORTS § 767. It is not improper for an agent to say, "You have no coverage for X," or words to that effect. It's not improper for an underwriter to say, "we will not cover that risk."

---

* NurtureSchool also has evidentiary objections to the unemployment hearing transcript. The Court will address them when it considers the school's summary judgment motion.

All that is just business. The agent or underwriter may be mistaken, or even hard-nosed, but neither is improper conduct. "No coverage" is not the same thing as "we'll cancel this policy if . . .."

Tiffany also mentioned (without specifics) that NurtureSchool's Sunstar policy was coming up for renewal. *Doc. 102-2 at 18*. Matthews doesn't argue from this circumstance. Again, the scope of coverage is a proper topic for discussion at renewal or any other time. The record contains no solid indication that Sunstar's upcoming renewal decision would turn on Malley. In any event, a potential nonrenewal is not the same thing as the immediate cancellation Tiffany asserted.

The Court also cannot ignore the rest of the record. Other than Tiffany's words, there's no evidence that cancellation was ever in prospect. Evins first said he didn't recall telling anyone that coverage would be canceled if Malley returned to NurtureSchool; then Evins clarified he never said it—all on cross by Matthews's lawyer. *Doc. 90-4 at 26*. Plus, when she was deposed (twice) Tiffany testified she never handled insurance for the daycare—that was Josh's job. *Doc. 102-6 at 67*. She says that he had reached out to Evins. *Doc. 102-6 at 70*. There's no evidence that Tiffany communicated with Evins or Sunstar in any way. She was unfamiliar with insurance issues: "I'm still learning, but at that time I was very much still learning how insurance worked and all that." *Doc. 102-6 at 69*. Her interpretation of what her husband told her about Sunstar's intentions is an insufficient foundation for a verdict

against Evins and Sunstar. Call it what you will—misunderstanding, overreaction, or something else, Tiffany's statement without personal knowledge about the insurance issues does not support a finding of improper inducement. *K.C. Properties*, 373 Ark. at 26–27, 280 S.W.3d at 11–12.

What about Evins's sign-off statement? "Very good. It sounds like it's all worked out the right way." *Doc. 102-2 at 47*. Taken in the light most favorable to Matthews, this comment endorses the result—no continued employment. But the timing is critical. Evins didn't induce NurtureSchool's decision with his closing words; he endorsed a decision his clients had already made. The timing undercuts Matthews's reliance on Evins's affirmation.

Last, there's Matthews's testimony. On deposition, she said Evins was just doing his job—by passing on requested information between Josh Sharp and the underwriters. *Doc. 90-3 at 10*. Why were Sunstar and Evins sued? Because, she said, Evins was on the emails. *Doc. 90-3 at 6, 8, & 9*. And in her declaration opposing summary judgment**, Matthews was clear about what effect the coverage discussions had on her losing her job. "NurtureSchool did not terminate my employment because of insurance coverage." *Doc. 102-1 at ¶90*. Instead, Matthews says "NurtureSchool manufactured the lack of insurance theme as a

** The Court also reserves a ruling on NurtureSchool's objections to the declaration.

pretext to disability discrimination." *Doc. 102-1 at ¶91.* Evins and Sunstar were, according to Matthews, used by the Sharps and the school to their ends. The Court understands Matthews's theory and will consider it when addressing NurtureSchool's motion for summary judgment. This record, though, would not support a verdict that Evins and Sunstar intentionally and improperly induced NurtureSchool to fire Matthews. *K.C. Properties*, 373 Ark. at 26–7, 280 S.W.2d at 11–12; RESTATEMENT (SECOND) OF TORTS § 767.

Motion, *Doc. 90*, granted.

So Ordered.

wpMarshall Jr.

D.P. Marshall Jr.
United States District Judge

11 September 2026